IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUSAN A. BAYER                  :       CIVIL ACTION
                                :
            v.                  :
                                :
FLUOR CORP., et al.             :       NO. 09-3107

MEMORANDUM

Dalzell, J.                                 January 28, 2010

        Susan Bayer's claims arise out of two life insurance

policies that her late husband, Herbert Bayer, had through his

employer, Fluor Corporation. Susan Bayer ("Susan" or "Bayer") was

Herbert's second wife, and his purported <u>third</u> wife, defendant

Sinead Cooke Bayer,[1] received the benefits from these policies

after he died on September 18, 2004. Susan claims that she and

Herbert never divorced and that his marriage to Sinead was void,

thereby making Susan the rightful beneficiary. She also asserts

claims against Meaghan Bayer, Herbert's daughter from his first

marriage, for Meaghan's alleged involvement in these issues.

        All of the institutional defendants have filed motions

to dismiss or for summary judgment. We will grant the motion of

_____

        [1] Sinead is named in the Complaint as "Sinead Cooke,"
but the parties' exhibits demonstrate that she calls herself
"Sinead Cooke Bayer." Herbert's daughter from his first marriage,
Meaghan Bayer, is <u>also</u> a defendant. To distinguish among the
Bayers, we will generally refer to them by their first names. All
references to "Bayer" are to the plaintiff.

Fluor Corporation, the Fluor Corporation Salaried Employees'

Defined Retirement Plan, and the Fluor Corporation Benefits

Administrative Committee (collectively "Fluor Defendants" or

"Fluor Def.") to dismiss all claims against them. We will grant

the motion for summary judgment that Marsh U.S. Consumer

Connexions ("Marsh") filed and dismiss all claims against it. We

will also grant the motion of Connecticut General Life Insurance

Co. ("CGLIC"), Life Insurance Co. of North America ("LINA"), and

CIGNA Group Insurance ("CIGNA") (collectively "CGLIC Defendants"

or "CGLIC Def.") to dismiss[2] plaintiff's claim in Count I for

---

[2] The CGLIC Defendants move for dismissal under Fed R.
Civ. P. 12(b)(6) or, alternatively, for summary judgment, because
they rely on documents that the plaintiff did not include in her
complaint. But all of the documents on which they rely are
undisputedly authentic documents on which Susan's claims are
based, and we will therefore evaluate the CGLIC Defendants'
motion as a motion to dismiss. See Pension Ben. Guar. Corp. v.
White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).
    Marsh, on the other hand, supports its motion to
dismiss, or for summary judgment, with documents on which Susan's
claims do not rely. In Susan's response to Marsh's motion, she
also attaches documents that are outside of the pleadings. Susan
does not protest that she needs more time or discovery regarding
the issues that are relevant to Marsh's motion, and she attached
exhibits that she believes are relevant to resolving it. Given
that Susan filed her first lawsuit regarding these issues in the
fall of 2008 and has not asked for more time to present evidence
in response to Marsh's motion, we conclude that she has had a
"reasonable opportunity to present all the material that is
pertinent to [Marsh's] motion," and we will rule on it as a
motion for summary judgment. See Fed. R. Civ. P. 12(d).

benefits from the LINA policy, as that claim is time-barred. We will grant the motion to dismiss Counts II and III for breach of fiduciary duty, and we will also dismiss Susan's state law claims as to all defendants except Meaghan and Sinead.[3]

## I.  __Factual Background__

According to the Complaint,[4] Susan married Herbert on December 31, 1988. Susan claims that they were married until his death on September 18, 2004. Compl. at ¶¶ 4, 14. Susan was Herbert's second wife, and he had a daughter, Meaghan, from his first marriage. Id. at ¶ 11. At some point in 1998 or 1999, Herbert "returned to his jobsite in the Republic of Ireland" and began a relationship with Sinead. Id. at ¶ 16. Without Susan's knowledge, Herbert and Sinead were supposedly "married" in Las Vegas, Nevada on August 7, 1999. Susan contends that this marriage was invalid because she and Herbert were still married. She claims that they did not divorce before Herbert's death in

_____

[3] After this, the only remaining claims are: Count I against CGLIC and CIGNA for the CGLIC policy, which the plaintiff refers to as the "GUL" policy; Count VI as to Meaghan and Sinead; Count VII against Sinead; and Count VIII against Meaghan.

[4] In ruling on the motions to dismiss, we are obliged to assume the veracity of the well-pleaded facts in the Complaint.

2004, but she did not learn that Herbert was dead until eight months after the fact. Id. at ¶ 17.

After Susan and Herbert were married, he began working for Fluor Corp., which offered as part of its benefits package a 401(k) plan, defined retirement plan, term life insurance policy from LINA ("LINA Policy"), and a group life insurance policy from CGLIC ("CGLIC policy"). Id. at ¶ 14. CIGNA Group Insurance was the administrator of the LINA and CGLIC policies, and the Fluor Defendants were the plan administrators for unspecified "employee benefit plans." Id. at ¶¶ 7, 9. According to the allegations in the Complaint, Marsh "was" the third-party administrator for the life insurance policies and "may" have been a plan administrator for the retirement plans. Id. at ¶ 8. Susan claims that the life insurance policies, among other benefits, were subject to ERISA. Id. at ¶¶ 12-13. In the first paragraph of Susan's complaint, she states that she makes claims for benefits under the life insurance policies and the defined retirement plan. Id. at ¶ 1. But in Count I of her complaint, in which she asserts her claim for benefits under ERISA, she mentions only the life insurance benefits. See id. at ¶¶ 31-33.

In June and July of 2005, after she learned of Herbert's death, Susan contacted Fluor Corp. regarding her claim

to his insurance and retirement benefits, and on July 6, 2005 CIGNA informed her in writing that she was not entitled to the benefits because Herbert "renominated the beneficiary" for his life insurance policy.[5] Id. at ¶¶ 18, 25. Susan complains that CIGNA did not advise her of her rights to perfect her claim or bring suit under ERISA. Id. at ¶ 26. On July 15, 2005, Susan gave the Fluor Retirement Savings Center certification of her marriage to Herbert and demanded the benefits, but no one responded. Id. at ¶ 18. At some unspecified point, someone told Susan that the insurance and retirement benefits had been paid to Sinead. Susan claims that Sinead got the benefits because the plans were misinformed that Sinead was Herbert's spouse. She also alleges that Herbert did not submit a proper beneficiary change form to make Sinead the beneficiary. Id. at ¶ 19.

In July of 2005, Susan had a conversation with Dan Shustock, a Life Claim Specialist for CIGNA, and Shustock told her that she was not entitled to the benefits because the beneficiary designation had been changed on September 9, 2001. Id. at ¶ 23. He told her that the file was closed and that CIGNA would not reopen it; he also allegedly advised her not to seek

---

[5] It appears that this letter was dated July 6, 2005, but Susan received it on July 11, 2005. See Compl. at ¶ 25.

legal remedies because it would be costly and unsuccessful. Id.

Susan engaged counsel on December 1, 2005, and her lawyer submitted a "formal claim" to CIGNA on January 4, 2006. Id. at ¶ 27. On May 2, 2006, CIGNA "issued a formal denial to counsel who communicated the denial to the Plaintiff." Id. at ¶ 29. Susan repeatedly asked for copies of documents related to the payment of these benefits, but CIGNA refused to provide them until she filed her first lawsuit on September 16, 2008.[6] Id. at ¶ 20. One of the documents that CIGNA provided to Susan at that time was a supposed change of beneficiary form, which was dated July 9, 2001. Id. at ¶ 22. Susan argues that this form was not for changing beneficiaries but instead was a "decrease in coverage form." Id. Until she got CIGNA's file, Susan thought her claim for benefits was "virtually hopeless." Id. at ¶ 23. She also did not know until that point that the change of beneficiary form to which CIGNA referred in its July 2005 letter was -- from

---

[6] This case is Susan's second lawsuit regarding her claims to Herbert's benefits. She filed her complaint in the first case in the Court of Common Pleas of Bucks County, Pennsylvania, on September 16, 2008, and CIGNA removed it to our Court on November 12, 2008. Susan A. Bayer v. Fluor Corporation, et al., C.A. No. 08-5336. We dismissed that complaint because Susan failed to timely file responses to the defendants' motions to dismiss. We closed that case on January 23, 2009. Susan filed the complaint in this case nearly six months later, namely, on July 13, 2009.

Susan's point of view -- ineffective. Id. at ¶ 25.

According to Susan, Sinead and Meaghan knew that they were not entitled to the life insurance benefits but, colluded to submit a false claim for them and then shared the proceeds. Id. at ¶ 24.

## II.  **Analysis**[7]

---

[7] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has more recently refined Twombly to explain that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
     In determining whether Susan has stated a "plausible" claim for relief, the Supreme Court has instructed that we should "draw on [our] judicial experience and common sense." Id. at 1950. The facts in Susan's complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). A complaint "does not need detailed factual allegations" but must include "more than labels and conclusions." Id. at 555. We do not presume, moreover, that the plaintiff's legal conclusions are true. Id.
     In Bayer's response to Marsh's motion to dismiss, she rather incredibly ignores the not-so-recent developments -- notably Twombly and Iqbal -- in the standard that we use to rule on a motion to dismiss. She blithely states that we should only dismiss pursuant to Rule 12(b)(6) "where it is certain no relief could be granted under any set of facts that could be proved." Pl. Marsh Resp. at 5 (plaintiff's added emphasis omitted). The Supreme Court expressly abandoned this standard in Twombly, 550 U.S. at 562-3, and we caution plaintiff's counsel that we will

## A.   Count I for Benefits under § 502(a)(1)(B) of ERISA

In Count I of her Complaint, Susan asserts a claim for
benefits under § 502(a)(1)(B) of ERISA[8] against the Fluor
Defendants, CGLIC Defendants, and Marsh. She avers that she "is
entitled to receive benefits due her under a life insurance
policy in the face amount [of] $50,000.00 [the LINA policy] and a
GUL claim in the approximate amount of $223,000.00 [the CGLIC
policy] plus interest." Compl. at ¶ 31. Susan claims that the
defendants were arbitrary and capricious in denying her benefits
because they never requested proof that her marriage to Herbert
had ended, Herbert never filed a proper change-of-beneficiary
form to name Sinead as the beneficiary, and the defendants did
not conduct a reasonable and appropriate investigation into
Susan's claims. Id. at ¶ 33. In Count I, Susan does not mention
the retirement plan benefits that she discusses in Paragraph 1 of
her Complaint; we thus conclude that in Count I she seeks relief
based solely on the life insurance plans. CGLIC does <u>not</u> seek to

_____

not tolerate further disregard for the current state of the law.

        [8] Under that Section, which is codified at 29 U.S.C.
1132(a)(1)(B), a beneficiary may sue "to recover benefits due to
him under the terms of his plan, to enforce his rights under the
terms of the plan, or to clarify his rights to future benefits
under the terms of the plan."

dismiss Susan's claim in Count I as to its policy, the value of which is $223,000.

But LINA moves to dismiss Susan's claims as they relate to <u>its</u> policy -- valued at $50,000 -- because it argues that the policy's contractual time limitation for filing suit on these claims (the "contractual time limit") ran before she filed this Complaint on July 13, 2009. Under the LINA policy, "[n]o action at law or in equity may be brought to recover benefits under the [LINA Policy] . . . more than 3 years after the time satisfactory proof of loss is required to be furnished." Life Insurance Company of North America Group Policy ("LINA Policy") at 15, Ex. B to Renee Worst Decl., CGLIC Def. Mot. Ex. 1.[9] That policy also provides that proof of loss "must be given to the Insurance Company [LINA] within 90 days after the date of the loss for which a claim is made." <u>Id.</u> at 13. LINA contends that the applicable date of loss is the day Herbert died, September 18, 2004. But LINA also argues that Susan's claims under this policy

---

[9] Susan did not attach the policies at issue to her complaint, but we may refer to them in ruling on the defendants' motions to dismiss -- without converting this motion to a motion for summary judgment -- because Susan's claims are based on these documents and there is no dispute as to their authenticity. <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

accrued and that the time limit began running on May 2, 2006 --
well after the deadline for the proof of loss -- when LINA issued
a formal denial of insurance benefits to plaintiff through her
counsel. CGLIC Def. Br. at 7 (citing Compl. at ¶ 29). Susan filed
her complaint in this case on July 13, 2009, which is more than
three years after LINA contends Susan's claim accrued. LINA
therefore argues that the contractual time limit bars her claim
to the LINA policy benefits.

LINA admits that without the contractual time limit the
statute of limitations for Susan's claim would be four years. Id.
at 19. See also Koert v. GE Group Life Assur. Co., 231 Fed.Appx.
117, 119-20 (3d Cir. 2007) (unless the parties contract to other
terms, it would be appropriate to apply the four-year
Pennsylvania statute of limitations for breach of contract claims
to a claim for benefits under ERISA). But contracting parties may
agree to a shorter statute of limitations, as long as it is
reasonable. See id. at 120 (applying a three-year contractual
statute of limitations to a claim for benefits under ERISA);
Fontana v. Diversified Group Admin., Inc., 67 Fed.Appx. 722, 724
n.1 (3d Cir. 2003) (upholding as reasonable a three-year
contractual statute of limitations). In Susan's response, she
does not contest the fact that the policy includes this language

or that a three-year contractual time limit would be reasonable, so we will not further discuss those issues.

The parties agree that the contractual time limit begins to run "'when a plaintiff discovers or should have discovered the injury that forms the basis of the claim.'" CGLIC Def. Br. at 20 (quoting Bamgbose v. Delta-T Group, Inc., 638 F.Supp.2d 432, 438 (E.D. Pa. 2009) (McLaughlin, J.)). See also Pl. Resp. to CGLIC Def. at 10 ("Defendants properly point out the 'Discovery Rule' in determining when the statute of limitations begins to run."). "In the denial of benefits context . . . a non-fiduciary cause of action accrues when a claim for benefits has been denied." Bamgbose, 638 F.Supp.2d at 438. As noted, Susan knew that her claim for the life insurance benefits had been denied on May 2, 2006. Compl. at ¶ 29. But she argues that she did not know that the LINA policy had the three-year contractual time limit until she got a copy of the policy on September 16, 2008. She contends -- without any legal support for this position -- that the contractual time limit was tolled until that date.

Defining the clause "injury that forms the basis of [Susan's] claim" is the lynchpin in determining when the contractual time limit began to run for the LINA policy. Susan

11

apparently argues that the date of the "injury" was when she

received a copy of the LINA policy on September 16, 2008. LINA

first asks us to borrow the definition of <u>injury</u> from the policy

and conclude that the date of the injury was the date of

Herbert's death. CGLIC Reply Br. at 7-8. But it also argues that

her claims regarding the LINA policy accrued on May 2, 2006 when

she learned of the denial of benefits.

We believe this last approach constitutes the best view

because the <u>denial</u> of the life insurance benefits is the injury

on which Susan bases her LINA policy claim in Count I. In Susan's

Complaint, she avers that "[o]n May 2, 2006 Cigna Group Insurance

issued a formal denial to counsel who communicated the denial to

the Plaintiff." Compl. at ¶ 29. Susan herself admits that she

discovered the injury -- the denial of benefits -- on that day,

and that day is therefore the day on which the three-year

contractual time limit began to run.

Like the CGLIC Defendants, the Fluor Defendants also

contend that the complaint is untimely as to the LINA policy due

to the expiration of the contractual time limit. In Susan's

response to that argument, she contends that the May 2, 2006

letter did not give her "clear knowledge" that CIGNA rejected her

claim because "she was told the account was 'zero.'" Pl. Resp. to

Fluor Def. at 7. She claims that the letter informed her that "there was nothing to claim, not that that which could be claimed was denied to her." Id. But in her Complaint, Bayer forthrightly stated that "[o]n May 2, 2006 Cigna Group Insurance issued a formal denial to counsel who communicated the denial to the Plaintiff." Compl. at ¶ 29.

We need not go beyond plaintiff's own characterization in her Complaint of the May 2, 2006 letter, but the correspondence leading to that letter confirms that Susan's own view of it as a "denial" is correct. Five months earlier, on January 4, 2006, Susan's attorney wrote to CIGNA that "Mrs. Bayer [Susan] expects to have this situation remedied and to be rightfully paid her proceeds from her husband's policy promptly or we will advise her to pursue any and all legal remedies she has available to her." Letter from Wendy J. Ashby to CIGNA, Jan. 4, 2006, Pl. Resp. to CGLIC Def. Ex. D. Later that month and in early February, Beth Ann Miller of CIGNA wrote to Susan's counsel and stated that CIGNA was still reviewing Susan's request. Letters from Beth Ann Miller to Wendy J. Ashby, Jan. 20, 2006 and Feb. 8, 2006, Pl. Resp. to CGLIC Def. Ex. E and F.

In the May 2, 2006 letter, Beth Ann Miller wrote to Ron Miller (who had apparently become Susan's attorney) to "provid[e]

our position with respect to the basic and group universal life insurance policies [the CGLIC and LINA policies] which insured Herbert Bayer who was an employee of Fluor Corporation." Letter from Beth Ann Miller to Ron R. Miller, May 2, 2006, Pl. Resp. to CGLIC Def. Ex. G at 1. She explained that the proceeds of both life insurance policies had been paid and claimed that "LINA and CGLIC adjudicated both policies referenced above in accordance with the policy provisions and/or information contained in the respective claim files. Therefore, we conclude that the decision was made reasonably and within the parameters of the benefit plans which are subject to ERISA." Id. at 2. Set in this context, the only reasonable way to read the May 2, 2006 letter -- as Susan herself recognized in Paragraph 29 of her Complaint -- is as a denial of benefits.

Susan also argues that the CGLIC Defendants may not assert this defense because they "act[ed] in a manner that misled the beneficiary causing her not to bring suit in a timely manner" and thereby "waived the provision in its dealings with plaintiff." Bayer Resp. to CGLIC Def. at 7. But Susan points to no facts in her Complaint -- or anywhere -- to support her claim that the defendants waived this defense. For example, she does not aver that anyone assured her that she would have more time to

file her claim or gave her an untimely deadline for doing so.

Susan argues that CIGNA, on behalf of LINA, "repeatedly concealed and frustrated [her] attempts to obtain information on the basis of the payment of benefits to Sinead Cooke." Id. at 9. She concedes that Herbert could have changed the beneficiary to Sinead but argues that he did not actually do so because the form on which this change was noted was not actually a change-of-beneficiary form. She complains that Herbert wrote on that form that he was married to Sinead, but legally he was not. Susan contends that if she had known "at the onset of the claims" that Herbert had claimed that Sinead was his wife on this form -- rather than in the fall of 2008 when she saw the whole file -- she would have known the actual basis for the denial of her benefits and "her options would have been made clear." Bayer CGLIC Resp. at 9.

The fact that the defendants declined to provide Susan with the file until she brought suit in the fall of 2008 does not, however, support her claim that anyone "misled" her, and she cites no legal authority to support that argument. She could have filed suit and gained access to these documents before the fall of 2008. But, instead, at some point in 2006 she filed a complaint with the Commonwealth's Department of Insurance, which

determined that it had no jurisdiction over the case and "closed its file." Id. at 4-5. She thereafter hired a new attorney, who wrote to CIGNA on December 14, 2007 and requested the documentation that supported the denial of Susan's benefits claim. Id. at 5. CIGNA again told Susan that it would not release the information without a subpoena or court order. In August of 2008 Susan returned to her first attorneys, and they filed a lawsuit on September 16, 2008. On that day, CIGNA gave Susan the contents of its file.

Susan's first lawsuit -- which was timely filed under the terms of the LINA policy -- was removed to our Court and then dismissed after she failed to respond to the defendants' motions to dismiss. That first lawsuit was terminated on January 23, 2009 -- still within the contractual time limit for filing a suit based on the LINA policy. But Susan did not file this suit until July 13, 2009, which is more than three years after May 2, 2006. She offers no legal support for her claim that the contractual time limitation in the LINA policy should have been tolled until she was aware of it. As defendants point out, it is strange that Susan learned about the three-year time limit when she got the files from CIGNA on September 16, 2008, but then allowed her timely lawsuit to be dismissed for her failure to respond to the

motions to dismiss. We see no reason to give her yet another bite at this apple.

Susan also contends that the May 2, 2006 letter did not trigger the contractual time limit because it did not explain the steps to pursue review of the denial of benefits. In support of this contention, she cites Epright v. Envtl. Res. Mgmt., Inc., Health and Welfare Plan, 81 F.3d 335 (3d Cir. 1996), in which our Court of Appeals held that "[w]hen a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered." Id. at 342. In their reply brief, the defendants argue that Epright does not apply to the issue here -- when the contractual time limit for filing suit began -- because Epright only dealt with the time limit for obtaining an internal "administrative review" of a benefits denial from a plan. Susan responds that "[i]n Epright the plan failed to advise the claimant [of] the right to seek redress in Federal Court." Pl. CGLIC Resp. Br. at 10. She does not provide a pin cite for any of her assertions about Epright, but our review of the applicable section of that opinion shows that our Court of Appeals did not even mention the Federal Courts or any cognate of that locution. It dealt rather with the time in which one who is

17

denied benefits may seek review of that decision from the Plan
Administrator -- not from the courts. <u>See</u> <u>Epright</u>, 81 F.3d at
341-2.

Susan also cites <u>Hahnemann Univ. Hosp. v. All Shore,
Inc.</u>, 514 F.3d 300, 307 (3d Cir. 2008), in further support of
this argument. But, as in <u>Epright</u>, our Court of Appeals in
<u>Hahnemann</u> dealt with the question of the timeliness of a request
for administrative review, <u>not</u> the timeliness of filing a
complaint in court. <u>Id.</u> ("Because the letter to Hahnemann did not
state the appropriate steps <u>for administrative review</u>, the sixty-
day time bar to seek <u>administrative review</u> was never triggered."
(emphasis added)). We agree with defendants that neither <u>Epright</u>
nor <u>Hahnemann</u> supports Susan's claim that the contractual time
limit on filing suit for the LINA policy was tolled because the
defendants failed to advise her on how to challenge the denial.

Because Susan did not file her complaint until after
the three-year contractual time limit had run -- and because she
has not provided any relevant legal support for her view that the
time limit should have been tolled -- we will dismiss her claims
in Count I regarding the LINA policy.

18

**B.    Fluor Defendants' Motion to Dismiss Count I**

The Fluor Defendants also move to dismiss Count I. They argue that the benefit plan -- not Fluor Corporation itself -- is the proper defendant for a claim for benefits pursuant to ERISA § 502(a)(1)(B). They also contend that we should dismiss Count I as to the Fluor Corporation Salaried Employees' Defined Retirement Plan and the Fluor Corporation Benefits Administrative Committee because those entities are involved <u>only</u> with pension benefits. As we have noted, in Count I Susan seeks only life insurance benefits but not pension benefits.

In Susan's response to the Fluor Defendants' motion to dismiss Count I, she references Fluor's summary plan descriptions for its defined retirement plan and salaried employees savings investment plan -- Exhibits I and J to Fluor's motion -- and claims that "[t]he allegation of responsibilities including the duty as 'Plan Administrator' is not well defined in the documents available to plaintiff and need [<u>sic</u>] to be explored and examined by means of discovery." Pl. Resp. to Fluor Def. at 1. She also explains that these plans -- the <u>pension</u>-related plans -- instruct an employee to submit a request for review of a benefit denial with the Benefits Administrative Committee of the Defined Benefit Plan of Fluor Corporation. <u>Id.</u> Despite her references to

these pension plans, Susan admits that her complaint "avers she was denied approximately $273,000.00 in benefits under <u>life insurance</u> policies administered by CIGNA Group, underwritten by Life Insurance Company of North America . . . and Connecticut General [Life] Insurance Company." <u>Id.</u> at 2 (emphasis added). These references to the pension plan documents have no bearing on the question of whether Susan alleged facts to connect the Fluor Defendants to decisions regarding the distribution of Herbert's life insurance benefits.

Susan complains that before she filed her lawsuit neither the Fluor Defendants nor anyone else told her that pension benefits had been paid to Sinead, and as a result she did not include a claim for pension benefits in her complaint. <u>Id.</u> She states that she will file a motion "in very short order" for leave to amend the Complaint and include a claim for pension benefits. <u>Id.</u> at 5. But she filed her response to the Fluor Defendants' motion on October 14, 2009 and has not yet filed that promised motion.

Susan does not effectively answer the Fluor Defendants' arguments that Fluor Corporation is not a proper defendant and that the other two Fluor entities should be dismissed because they only dealt with pension benefits. She states in her response

that Fluor's claim that it was not involved in the life insurance policies "may be ... correct" but that "there has been no exchange of documentation nor other discovery which would confirm Fluor's position." Id. at 4.

In responding to a motion to dismiss, Susan does not need to provide evidence to support her apparent position that Fluor was involved in the distribution of the life insurance benefits at issue here. But she must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The "misconduct" that Susan alleges in Count I was the denial of life insurance benefits and the decision to pay those benefits to Sinead. See Compl. at ¶ 31-33. In her response, she points to no facts in the Complaint that would support a claim that the Fluor Defendants were involved in these actions, and on our own review of the Complaint we find no such facts. She claims that the "Fluor Corporation employee benefits plans were established under ERISA for the purpose of providing eligible employees and their dependents with certain benefits, including life insurance policies issued by LINA and CGLIC." Id. at ¶ 12. She also claims that the Fluor Defendants administered, and had some authority over, "the policy", and were

"a fiduciary" to it, but she does not specify to <u>which</u> "policy"
this assertion applies. <u>Id.</u> at ¶ 13.

Susan alleges that in the summer of 2005 she asked
Fluor Corp. about her entitlement to benefits, including "his
insurance policy" and that she received a written response from
<u>CIGNA</u>. <u>Id.</u> at ¶ 18. She then made a demand to the "Fluor
Retirement Savings Center" for the benefits but got no response.
<u>Id.</u> She alleges that <u>CIGNA</u> refused to provide documentation and
that she spoke with a <u>CIGNA</u> employee about her eligibility for
benefits. See <u>Id.</u> at ¶¶ 19-23, 25-29. The May 2, 2006 denial
letter came from <u>CIGNA</u>, too. Susan tacitly admits this problem in
her response to the Fluor Defendants' motion to dismiss Count I.
She writes that "<u>[i]f</u> the amendment [to the Complaint] is
permitted <u>then</u> the objection of Fluor is met. Fluor would <u>then</u> be
asked to defend the claim on the merits." Pl. Resp. to Fluor Def.
at 6 (emphasis added). <u>See also</u> <u>id.</u> at 8 ("Plaintiff believes she
is entitled for relief under Count I provided leave may be
granted to amend her Complaint to allow the pleading of the claim
for the benefit [presumably the pension benefits] most recently
conceded by Fluor to have existed at the time of Herbert Bayer's
death."). Susan thus asks us to deny the motion to dismiss a
claim that <u>is</u> in the complaint (for life insurance benefits)

because she plans at some still-future point to add another claim that is <u>not</u> in the complaint (for pension benefits) for which she alleges the Fluor Defendants could be held accountable. This is -- to be frank -- a preposterous request.

Because there are no facts in the Complaint that could support a claim that the any of the Fluor Defendants were involved in the allegedly improper distribution of Herbert's life insurance benefits -- and because Susan fails to point to any such facts in her response to their motion to dismiss -- we will grant their motion and dismiss Count I as to the Fluor Defendants.

### C.  <u>Breach of Fiduciary Duty</u>

In Count II, Susan asserts a claim against the Fluor Defendants and Marsh for breach of fiduciary duty under ERISA §§ 404(a)(1)(A) and 502(a)(3). In Count III, she makes a claim against the same defendants for breach of fiduciary duty pursuant to ERISA §§ 409 and 503. For both Counts she seeks a judgment "for benefits due under the Plan with interest and attorney's fees." Compl. at clauses following ¶¶ 36 and 39. Susan claims in Count II that the defendants breached a fiduciary duty to her by improperly administering the policy, failing to inform her how to

23

perfect her claim under ERISA, and authorizing payments to be
made to an ineligible beneficiary. Id. at ¶ 36. In Count III, she
avers that the defendants breached their fiduciary duty "by
failing to comply with the claim's [sic] procedure requirements
under ERISA and regulations promegated [sic] thereunder by the
U.S. Department of Labor." Id. at ¶ 39.[10]

The Fluor Defendants argue that the only sections of
ERISA that provide relief for breach of fiduciary claims are §§
502(a)(2) and 502(a)(3) and that Susan cannot get relief directly
under §§ 404(a)(1)(A), 409, or 503. They contend that we should
dismiss her claim under ERISA § 502(a)(2) because she seeks
relief for herself, not on behalf of the plan, as that section
requires.[11] And they argue that we should dismiss her claim under
§ 502(a)(3) because she seeks monetary relief, and § 502(a)(3) is

---

[10] We will grant summary judgment in Marsh's favor on
these counts -- and all other counts against it -- for the
reasons that we describe below.

[11] ERISA § 502(a)(2) allows a beneficiary to sue "for
appropriate relief under section 1109 of this title." 29 U.S.C. §
1132(a)(2). Pursuant to § 1109, one who is a fiduciary to a plan
and breaches the duties of one in such a position "shall be
personally liable to make good to such plan any losses to the
plan resulting from each such breach." 29 U.S.C. § 1109(a)
(emphasis added).

limited to equitable relief.[12] They also claim that because Susan

has an adequate remedy for the benefits under § 502(a)(1)(B),

which she invokes in her claim in Count I, she cannot <u>also</u> get

equitable relief under § 502(a)(3). <u>See</u> <u>Varity Corp. v. Howe</u>, 516

U.S. 489, 515 (1996) (regarding § 502(a)(3), "we should expect

that where Congress elsewhere provided adequate relief for a

beneficiary's injury, there will likely be no need for further

equitable relief, in which case such relief normally would not be

'appropriate'"). The Fluor Defendants exhaustively discuss and

support these arguments. <u>See</u> Fluor Def. Br. at 14-24. They also

argue in the alternative that Susan's breach of fiduciary claims

are subject to an expired three-year statute of limitations and

that we should dismiss Counts II and III against the plan because

it cannot be a "fiduciary" under ERISA. Fluor Def. Br. at 24-26.

    We will not discuss the Fluor Defendants' arguments in

detail because in Susan's response to their motion and brief, she

ignores their thirteen pages of legal analysis regarding Counts

_____

        [12] ERISA § 502(a)(3) allows for an injunction or "other
appropriate equitable relief." 29 U.S.C. § 1132(a)(3). <u>See also</u>
<u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 221,
(2002) ("Because petitioners are seeking legal relief -- the
imposition of personal liability on respondents for a contractual
obligation to pay money -- § 502(a)(3) does not authorize this
action.").

25

II and III and baldly asserts that she "may maintain claims under
Counts II to VI under certain circumstances." Pl. Resp. to Fluor
Def. at 7. The two paragraphs that follow this conclusory
statement address her state law claims and her argument that she
will have a claim under Count I _if_ she (someday) amends Count I
to include a claim for which the Fluor Defendants may be liable.
She provides no explanation regarding under what "certain
circumstances" she could maintain her claims in Counts II and III
against the Fluor Defendants. We will therefore grant as
unopposed their motion to dismiss Counts II and III.

### D.    Plaintiff's State Law Claims

In Counts IV and V, Susan asserts state law claims for
breach of contract and bad faith, respectively, against the Fluor
Defendants, CGLIC Defendants, and Marsh. She makes a constructive
trust claim against all defendants in Count VI and a claim
against CIGNA in Count IX for "Trespass, Deceit, Concealment and
Misrepresentation." Compl. at Count IX.[13] The CGLIC defendants
argue that ERISA pre-empts these state law claims and move to
dismiss them. In Susan's response to the CGLIC Defendants'

---

[13] In Counts VII and VIII Susan asserts state law
claims against Sinead and Meaghan, but neither of them has
responded to the Complaint.

motion, she agrees to dismiss these claims against those
defendants who admit that ERISA applies to the policies . Pl.
Resp. to CGLIC Def. at 7. We will therefore grant as unopposed
the motion of CGLIC, LINA, and CIGNA to dismiss these counts.

The Fluor Defendants also move to dismiss Counts IV, V,
and VI due to ERISA pre-emption. Susan responds that "Federal
preemption of state-based claims applies provided all defendants
concede her claims are properly brought under ERISA and the
Federal statutes." Pl. Resp. Fluor Def. at 7. She rather
confusingly requests that, if we do not grant her leave to amend
her claim in Count I, we not dismiss Count VI because "[t]his
part of plaintiff's Complaint can encompass Plan Benefits[14] as
well as the insurance proceeds claimed." Id. at 8. Because (1)
Susan has (still) not moved to amend her complaint, (2) the Fluor
Defendants admit that ERISA would apply to the pension benefits,
Fluor Def. Br. at 4 n.2, and (3) Susan has agreed to dismiss
state law claims as to all defendants who concede that ERISA
applies, we will dismiss Counts IV, V, and VI as to the Fluor
Defendants.

---

[14] We assume that she refers here to pension "Plan
Benefits," but this is not clear.

### E. CIGNA's Claim That It Is a "Non-entity"

CIGNA moves to dismiss Susan's claims against it and claims that it is a "Non-Entity and Improper Party." CGLIC Def. Br. at 22. It contends that "CIGNA Group Insurance" is only a service mark, not a corporate entity or person who may be held liable under ERISA. Susan responds that it is too early in the litigation to identify the role of "CIGNA Group Insurance," which appears on many documents that are related to the distribution of Herbert's benefits.[15] Taking the allegations in Susan's complaint to be true, we agree with her on this point. It may be that "CIGNA Group Insurance" is an improper entity, but it is too early to tell. The fact that "CIGNA Group Insurance" is a registered service mark by no means proves that it is nothing <u>but</u> a registered service mark. We will therefore deny the motion to dismiss Count I against CIGNA as it relates to the CGLIC policy. But for the reasons we discuss above, we will dismiss Susan's claims against CIGNA in Count I as to the LINA policy and the state law claims against CIGNA.

---

[15] Bayer also submits an apparent printout from the Pennsylvania Department of State that shows that an entity called "Cigna Corporation" is registered in Pennsylvania. But "Cigna Corporation" is not the same as "CIGNA Group Insurance," and we do not see how the registration of the former shows that the latter is an entity that may be sued under ERISA.

## F.   <u>Marsh's Motion to Dismiss or for Summary Judgment</u>

Marsh moves for dismissal and summary judgment on all of Susan's claims against it. In the Complaint, she alleged that Marsh "was" a third-party administrator for Fluor's life insurance policies and benefits and may also have been a plan administrator. But Marsh claims that one of its vice-presidents conducted an investigation and concluded that it was not the third-party administrator for the life insurance policies at the time of Herbert's death. Marsh Mot. at ¶ 4. It also reports that it did not pay or process any claims for the policies at issue and that Bayer mistakenly named it as a defendant. <u>Id.</u> at ¶¶ 5-6, 8. We will deny Marsh's motion to <u>dismiss</u> because we must assume that the facts in Bayer's complaint -- including her allegation that Marsh <u>was</u> involved with the policies at issue here -- are true. But we will now turn to its motion for summary judgment.

Marsh supports its motion for summary judgment with an affidavit from Karen Winterbottom, a Senior Vice-President at Marsh. Karen Winterbottom Aff., Marsh Mot. Ex. B ("First Winterbottom Aff."). Because Marsh presents facts outside the pleadings, we may treat its motion as one for summary judgment, as long as all parties have "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ.

P. 12(d). We should grant Marsh's motion for summary judgment if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(2).

Marsh supported its motion for summary judgment with Winterbottom's affidavit, and Bayer submitted her own evidence (such as it is) in opposition to the motion. Bayer did not request additional discovery to look into this issue or otherwise suggest that she did not have access to evidence to support her position. As we explained above, this dispute already has a long history, and Bayer has not claimed that she needs more time to gather discovery regarding Marsh's involvement with the life insurance policies that are the source of her claims against the defendants. We therefore conclude that she has had "a reasonable opportunity" to present all of the pertinent material, and we will rule on Marsh's motion for summary judgment.

According to Winterbottom, Marsh was not Fluor's third-party administrator at the time of Herbert's death and did not handle any beneficiary forms or claims after he died. First Winterbottom Aff. at ¶¶ 4-6. Bayer complains that Marsh has not identified the third-party administrator, but that is plainly Susan's duty, not Marsh's.

Susan submits her unsworn declaration and five documents that she believes support her argument that Marsh was involved in the alleged mishandling of Herbert's life insurance benefits after his death. The first document is a letter from Marsh that pre-dates Herbert's death and concerns his life insurance through Bechtel, another of Herbert's employers. Letter from Marsh to Herbert E. Bayer, Aug. 1, 2004, Bayer Decl., Pl. Resp. to Marsh ("Bayer Marsh Decl."), Ex. 1. She claims that both Bechtel and Fluor "were large construction companies in which [Herbert] was apparently employed back and forth from one to the other with the benefit Plans being administered at both by Marsh." Pl. Resp. to Marsh at 3. She then states that she will learn the "terms of employment with each company" during discovery. Id. She contends that the "life insurance coverages overlapped" and that Marsh was the administrator of both plans and "controlled" them. Bayer Marsh Decl. at ¶ 6. But Susan does not explain why Marsh's involvement before Herbert's death with any policies that he had during his employment at Bechtel has any bearing on this case, which solely concerns the distribution of life insurance benefits that Herbert had through his work at Fluor.

Bayer also submitted a handwritten note from Sinead to

31

"Dan," which the parties seem to agree was addressed to Dan

Shustock, an employee of CIGNA, not Marsh. Undated note to "Dan"

from Sinead Cooke Bayer, Bayer Marsh Decl. Ex. 2. In a September

29, 2004 letter from Shustock to Sinead, which Bayer also

provides, Shustock wrote that he was waiting for beneficiary

designation information that "was being maintained by a prior

Third Party Administrator for Fluor Corporation." Bayer Marsh

Decl., Ex. 3. Marsh admits that it was the third-party

administrator before Herbert's death and that it provided a copy

of its file to Shustock. Marsh Reply, Winterbottom Aff., Ex. A

("Second Winterbottom Aff."). <u>See also</u> Letter from Erica Martin,

Marsh, to Dan Shustock, September 30, 2004, Bayer Marsh Decl. Ex.

4. But a letter from Shustock -- on CIGNA letterhead -- to Sinead

states that <u>Shustock</u> approved the claim and that the proceeds had

been deposited into her account. Letter from Dan Shustock to

Sinead C. Bayer, Oct. 21, 2004, Bayer Marsh Decl. Ex. 5.

Read in the light most favorable to Susan, her evidence

regarding Marsh leads only to the conclusion that Marsh provided

some documents to CIGNA to aid in <u>CIGNA</u>'s review of the claims

and that Marsh did so in a timely manner. These documents could

<u>not</u> support Susan's averments that Marsh was in any meaningful

way involved in beneficiary decisions after Herbert's death; in

fact, the October 21, 2004 letter from Shustock to Sinead -- on CIGNA Group Insurance letterhead -- states clearly that he approved Sinead's claim for benefits.

As the party moving for summary judgment, Marsh bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). It has done so by submitting the affidavit of a company executive that Marsh was not the third-party administrator for Herbert's life insurance plans at the time of his death. In response, Susan must "come forward with specific facts showing there is a genuine issue for trial." Id. at 587 (internal quotations omitted). She must present something more than mere allegations, general denials, vague statements, or suspicions. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982). Because Susan has not submitted any evidence that could support her conjecture that Marsh had anything to do with the purported misdeeds regarding Herbert's life insurance policies, and because she has had a reasonable opportunity to do so, we will grant Marsh's motion for summary judgment as to all of Susan's claims against it.

**III.  <u>Conclusion</u>**

We will dismiss Susan's claims in Count I regarding the LINA policy, but she may pursue that Count against CGLIC and CIGNA regarding the CGLIC policy. We will also dismiss Count I against the Fluor Defendants, the breach of fiduciary claims in Counts II and III, and the state-law claims in Counts IV, V, and IX. We will dismiss Count VI -- a state-law claim that Susan brought against all defendants -- as to everyone except Meaghan and Sinead. And we will grant the Marsh Defendants' motion for summary judgment on all counts against it.

BY THE COURT:

___\s\Stewart Dalzell