IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUSAN A. BAYER              :        CIVIL ACTION
                           :
         v.                :
                           :
FLUOR CORP., et al.        :        NO. 09-3107


MEMORANDUM

Dalzell, J.                              July 12, 2010

        Susan Bayer sues the defendants for money that she

contends they should have paid to her after her husband, Herbert

Bayer, died on September 18, 2004. The plaintiff filed her

complaint in this case, which is her second lawsuit regarding

these issues, on July 13, 2009.[1] On February 26, 2010, the Clerk

of Court entered default against defendant Sinead Cooke Bayer,

the woman who received the payments that Susan seeks. We

previously dismissed or granted summary judgment on all of the

other claims in Susan's complaint, except the one against

Connecticut General Life Insurance Co. ("CGLIC") for the proceeds

_____

        [1] We dismissed Susan's prior lawsuit, Civil Action No.
08-5336, after she did not file timely responses to the
defendants' motions to dismiss.

of one of Herbert's life insurance policies, the "CGLIC Policy."[2]

Bayer v. Fluor Corp., 682 F. Supp. 2d 484, 498 (E.D. Pa. 2010).

Susan claims that under § 502(a)(1)(B) of ERISA, which is codified at 29 U.S.C. § 1132(a)(1)(B), she is entitled to the proceeds of the CGLIC Policy, which is worth about $223,000. CGLIC has filed a motion for summary judgment as to the CGLIC Policy, and the parties have submitted extensive briefs and exhibits regarding that motion.[3] For the reasons we discuss

---

[2] The parties have also referred to the CGLIC Policy as the "GUL" policy. It was originally issued as GUL Policy No. M104590 and then re-issued as Policy No. 2024602. The other life insurance policy that was at issue in this case was the "LINA Policy," which the parties sometimes call the "term" policy. We dismissed Susan's claims to the LINA Policy because they were not timely filed.

Susan also argues that she was entitled to Herbert's retirement funds, but the only live claim in this matter has to do with the CGLIC Policy. We discuss the LINA Policy below because Susan confuses decisions that the insurer made regarding the LINA Policy with those that relate to the CGLIC Policy. We will not, however, discuss any of Susan's other complaints (e.g., regarding CGLIC's purported breach of its fiduciary duties, general mistreatment of Susan, compliance with ERISA's notice requirements, promissory estoppel, or mental anguish) because she does not have pending claims regarding any of those issues.

[3] In Susan's letter to the Court that accompanied a courtesy copy of her Sur-reply Brief, she informed us that she took Family Medical Leave from her job at Lehigh Valley Health Network to prepare her response to CGLIC's motion for summary judgment. As we are not aware of any provision of the Family Medical Leave Act that permits taking time off from work under the Act to prepare court filings, her statement is puzzling but
(continued...)

below, we will grant CGLIC's motion and, at long last, bring the curtain down on this dispute.

## I. __Factual Background__

Susan claims, and no one has disputed, that she and Herbert were married in 1988 and never divorced. Herbert then "married" Sinead Cooke Bayer in Las Vegas in 1999, but viewing the facts in the light most favorable to Susan, we will assume that Herbert and Susan never divorced and that Herbert's "marriage" to Sinead was therefore invalid.[4] Herbert died on

_____

[3] (...continued)
of no moment to the issues before us.

[4] Susan's filings reveal that her fury about Herbert's betrayal remains unbanked even at this late date. In discussing her conversations with the insurer regarding the CGLIC Policy, she states that

> [t]he Plaintiff felt that she was
> entitled to the money and deserved
> to be paid the money. She had been
> married for a long time and raised
> Meaghan [Herbert's daughter from
> yet another wife] virtually on her
> own while Herb worked at different
> jobsites. Once he started drinking
> heavily in Ireland, it was over.
> Jaundice started to kick in
> periodically as a result of the
> hepatitis C [listed on Herbert's
> death certificate as one of the
> causes of death], and Herb's

(continued...)

3

September 18, 2004, and Sinead contacted CIGNA Group Insurance,

which is no longer a defendant in this case, regarding the CGLIC

Policy. See Letter from Dan Shustock, CIGNA Life Claim

Specialist, to Sinead Cooke Bayer (Oct. 6, 2004), Def. Ex. 17.

Sinead submitted a Life Insurance Claim Statement, date-stamped

October 14, 2004, in which she claimed that she was Herbert's

"spouse." Life Insurance Claim Statement of Sinead Cooke Bayer

(Oct. 14, 2004), Def. Ex. 18. She attached a copy of Herbert's

Certificate of Death from Maine, which stated that Sinead was

Herbert's most recent spouse. Id. In an October 21, 2004 letter,

_____

(...continued)
            personality changed. A 20-year-old
            [Sinead], while in a pub, latches
            onto the decedent, an already-ill 50-
            year-old man. Yuck. But he's from
            America; she sees her ticket. Cooke,
            the quintessential opportunist, rides
            out the next few years in the States,
            while Herb is away, as usual, working
            at different jobsites. In fact, by
            2002 Cooke is hooked up and having a
            baby with somebody else.

        Pl. Sur-reply Br. at 11. Susan cites no evidence to
support any of the factual claims that she makes in this
statement. But more importantly, even if her characterization of
these events is true, it has no legally cognizable effect on the
dispute that remains before us. ERISA and the CGLIC Policy simply
do not allow us to go down the rabbit hole of determining who
"deserve[s]" insurance benefits. The question is who Herbert
actually designated as his beneficiary, not who he should have
designated.

Shustock informed Sinead that he approved her claim for the CGLIC Policy. Letter from Dan Shustock to Sinead Cooke Bayer (Oct. 21, 2004), Def. Ex. 19.

More than nine months later, on June 23, 2005, Susan wrote to CGLIC and claimed that Herbert's death benefits were paid to the wrong woman. Susan stated that "the policy has always listed his wife as the sole beneficiary" but that "a claim was filed and funds were paid to an individual who is not his spouse." Letter from Susan Bayer to Dan Shustock (June 23, 2005), Def. Ex. 20. Shustock wrote to Susan on July 6, 2005 and informed her that although Herbert designated Susan as the beneficiary of the CGLIC Policy "at one time," he changed his beneficiary of record on July 9, 2001 and Susan would thus receive no money from the policy. Letter from Dan Shustock to Susan Bayer (July 6, 2005), Def. Ex. 21.

On January 4, 2006, Susan's attorney wrote to CIGNA regarding the CGLIC Policy and stated that Herbert's marriage to Sinead was invalid because Herbert and Susan never divorced. Letter from Wendy J. Ashby, Esq. to CIGNA Group Insurance (Jan. 4, 2006), Def. Ex. 22. Ashby explained that it was the plaintiff's "understanding that Mr. Bayer's policy named his wife as beneficiary" and demanded that the CGLIC Policy proceeds be

paid to Susan. Id. Ashby included with her letter (1) Susan and

Herbert's marriage license that confirmed they were married on

December 31, 1988, (2) the Maine death certificate described

above, (3) Sinead and Herbert's marriage license from Nevada, and

(4) a "Marriage Certificate" for Sinead and Herbert from the

Candlelight Wedding Chapel in Las Vegas. Id. Sinead and Herbert's

marriage license stated that this was Herbert's second marriage

and that he was divorced in 1986. There is no mention on this

document of his 1988 marriage to Susan.

        Shustock next wrote to Ashby and said he was "referring

this matter to our Home Office to review the beneficiary issue."

Letter from Dan Shustock to Wendy J. Ashby, Esq. (Jan. 5, 2006),

Def. Ex. 23. On May 2, 2006, Beth Ann Miller, a Life Claim

Examiner for CIGNA Group Insurance, wrote to Ron Miller --

apparently one of Susan's attorneys -- and explained that the

CGLIC Policy proceeds were paid to Sinead because she was the

designated beneficiary on that policy. Letter from Beth Ann

Miller to Ron Miller, Esq. (May 2, 2006), Def. Ex. 25. She stated

that Herbert identified Sinead as his "spouse" when he designated

her as the beneficiary, but that he also listed her "by name,"

and that even though their marital status "may now seem suspect,"

CGLIC "distributed the proceeds to the named beneficiary [Sinead] as designated on July 9, 2001 by Herbert Bayer." Id.[5]

In December of 2007 yet another of Susan's lawyers contacted CIGNA regarding the LINA and CGLIC Policies. Letter from Debra Washington DeLain, Esq. to CIGNA Group Insurance (Dec. 14, 2007), Def. Ex. 26. She explained that Susan had been given Letters of Administration for Herbert's estate and demanded various documents. Id. Using much of the same language that Beth Ann Miller employed in her May 2, 2006 letter, Shustock told counsel that the CGLIC Policy proceeds were paid to Sinead because she was the beneficiary Herbert designated "by name," and this trumped the "suspect" marital status of Sinead and Herbert. Letter from Dan Shustock to Debra Washington DeLain, Esq. (Jan. 3, 2008), Def. Ex. 27. These letters and other communications between Susan, her several attorneys, and CGLIC or CIGNA failed to convince CGLIC that it should pay the money to Susan, and she then filed two lawsuits, the most recent of which is this matter.[6]

---

[5] Miller also discussed the LINA Policy and Susan's claims against Meaghan Bayer, but we will not discuss those issues because they are no longer live disputes in this case.

[6] Susan lays at Shustock's feet much of the blame for
(continued...)

what she believes was an improper beneficiary determination
regarding the CGLIC Policy. In her Sur-reply Brief, she <u>imagines</u>
an exchange, similar to a deposition, between herself and an
unidentified questioner regarding her interactions with Shustock.
The following is a sample from that fictional conversation:

> Q. Did Dan Shustock's denial letter
> of July 6, 2005 to Susan Bayer
> include a specific reference to the
> Policy provision on which the
> denial was based?
> A. No way. Read it for yourself if
> you don't believe me.
> Q. Did Dan Shustock's denial letter
> of July 6, 2005, to Susan Bayer
> include any additional information
> required for Susan Bayer's claim to
> be reconsidered and the reason this
> information might be necessary?
> A. OMG, no. He wanted Susan Bayer
> MIA, like forever, from that day
> forward.
> Q. Did Dan Shustock's denial letter
> of July 6, 2005, to Susan Bayer
> include a statement informing her
> of her right to appeal the decision
> and an explanation of the appeal
> procedure?
> A. C'mon. Is that a joke?

Pl. Sur-reply Br. at 10.

Susan does not cite to any <u>evidence</u> to support her
fanciful imaginings of Shustock's supposed ill will against her,
and we will give no weight to this or Susan's other creative
writings, all of which would be more at home in a Ministry of
Magic than in our Court. <u>See also</u> Pl. Sur-reply Br. at 14, 32-33
(containing more fabricated conversations in a question-and-
answer format).

(continued...)

The CGLIC Policy Certificate states that CGLIC "shall
have the authority, in its discretion, to interpret the terms of
the Plan, to decide questions of eligibility for coverage or
benefits under the Plan, and to make any related findings of
fact. All decisions made by [CGLIC] shall be final and binding on
participants and beneficiaries to the full extent permitted by
law." CGLIC Policy Certificate, Def. Ex. 12, at 62. That
Certificate allowed Herbert to change the beneficiary at any time
"on a form satisfactory to [CGLIC] and signed by the Owner." Id.
at 44. To change the beneficiary, Herbert did not need to get
consent from the previously designated beneficiary. Id.

Susan admits that "on the date of Herbert Bayer's[]
death, a beneficiary designation on a CGLIC enrollment form dated

---

[6] (...continued)
　　　　Susan claims that Shustock "threatened" her and told
her that if she pursued the insurance claim, she would be
"wasting her time" and would "never win." Pl. Sur-reply Br. at
12. She neither cites to nor provides any evidence to support
these claims, other than an amorphous reference to her "2005
journal notes." Id. at n.5.
　　　　These allegations -- and all of Susan's claims
regarding her supposed mistreatment at the hands of CGLIC, its
employees, and other individuals involved in denying her claim to
the CGLIC Policy -- are, furthermore, well outside the scope of
the narrow and simple question before us. That query is whether
CGLIC's decision to pay the benefits to Sinead was arbitrary and
capricious. As we explain below, it was not; indeed, we do not
see how CGLIC could reasonably have come to any other conclusion.

7/09/01 for Fluor Corporation and its Subsidiaries listed 'Sinead

Cooke Bayer' as the primary beneficiary, 100%," but Herbert

printed "SPOUSE" on that document (the "Form") next to the label

"Relationship." Pl. Resp. at 12, ¶ 26. See also id. at 19-20, ¶¶

44-46 ("It is admitted that Herbert Bayer[] submitted an

enrollment form dated July 9, 2001, designating Sinead Cooke

Bayer as the beneficiary" but arguing that Herbert did not

strictly comply with the requirements to change a beneficiary

because he filled out an "enrollment form" rather than a

"beneficiary form"); Group Universal Life Enrollment Form of

Herbert Bayer (July 9, 2001), Def. Ex. 13 at 2.

## II.  **Analysis**[7]

---

[7] Summary judgment is appropriate if there is no
genuine issue of material fact and the moving party is entitled
to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  In
ruling on a motion for summary judgment, the Court must view the
evidence, and make all reasonable inferences from the evidence,
in the light most favorable to the nonmoving party.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a
factual issue arises that cannot be resolved without a
credibility determination, at this stage the Court must credit
the non-moving party's evidence over that presented by the moving
party.  Id. at 255.

The moving party bears the initial burden of proving
that there is no genuine issue of material fact in dispute.
Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S.
574, 585 n.10 (1986). Once the moving party carries this burden,
the nonmoving party must "come forward with 'specific facts
showing there is a genuine issue for trial.'" Id. at 587 (quoting
(continued...)

Having canvassed the facts underlying the parties' sole
remaining dispute over the CGLIC Policy, we now turn to CGLIC's
motion for summary judgment. Given Susan's admissions regarding
the authenticity of the Form and CGLIC's possession of it at the
time of Herbert's death, no reasonable jury could conclude that
the decision to pay the CGLIC Policy proceeds to Sinead was
arbitrary and capricious. We will therefore grant CGLIC's motion
for summary judgment.

## A. CGLIC Was Not Arbitrary and Capricious

When an ERISA benefit plan gives its administrator
"discretionary authority to determine eligibility for benefits or
to construe the terms of the plan" -- as was the case with the

---

[7] (...continued)
Fed. R. Civ. P. 56(e)). The non-moving party must present
something more than mere allegations, general denials, vague
statements, or suspicions. Trap Rock Indus., Inc. v. Local 825,
982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v.
DuFresne, 676 F.2d 965, 969 (3d Cir.1982). It is not enough to
discredit the moving party's evidence; the non-moving party is
required to "present affirmative evidence in order to defeat a
properly supported motion for summary judgment." Liberty Lobby,
477 U.S. at 257 (emphasis in original). A proper motion for
summary judgment will not be defeated by merely colorable or
insignificantly probative evidence. See id. at 249-50. Also, If
the non-moving party has the burden of proof at trial, then that
party must establish the existence of each element on which it
bears the burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).

CGLIC Policy -- "the administrator's interpretation of the plan will not be disturbed if reasonable." <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997) (internal quotations omitted) (interpreting language substantively similar to that in the CGLIC Policy). Because CGLIC had the discretionary authority to determine who was eligible to receive the proceeds of Herbert's CGLIC Policy, we review that decision "under an arbitrary and capricious standard." <u>Id.</u> at 439. We may overturn CGLIC's determination that Sinead was Herbert's intended beneficiary "only if it is without reason, unsupported by the evidence or erroneous as a matter of law." <u>Id.</u> (internal quotations omitted). In reviewing CGLIC's action, we may only review the facts that CGLIC had at the time it made that decision. <u>Id.</u> at 440.[8]

---

[8] Susan argues that there is good cause for considering additional evidence beyond that record because, according to her, there is a suspicious two-week gap in the record from October 1, 2004 to October 15, 2004, which was shortly after Herbert died. Pl. Resp. at 20, ¶ 49. She believes -- but proffers no supporting evidence -- that CGLIC has hidden important documents from her. CGLIC, on the other hand, submitted a declaration under penalty of perjury stating that it produced a full copy of the non-privileged portions of the entire administrative record for this case, and it attached to its Reply Brief its privilege log, which lists only six documents. Declaration of Michael James, Def. Ex. 12; CGLIC Privilege Log, Def. Ex. 30 (attached to CGLIC Reply Br.). There are no documents on the privilege log between October

(continued...)

Susan admits that CGLIC had the Form in its files at the time of Herbert's death. She does not claim that the document is fraudulent or that there is any reason to question its authenticity. There is no dispute that in a section of the Form titled "BENEFICIARY DESIGNATION," Herbert wrote "SINEAD COOKE BAYER" on the blank provided for "First Beneficiary,"

---

[8] (...continued)
1 and 15, 2004, and the only items that are remotely close in time are the redaction of the claim reserve amount and emails regarding an unrelated claim and claimant, both of which were dated October 20, 2004. See CGLIC Privilege Log, Def. Ex. 30. There is no evidence to support Susan's belief that CGLIC is deceiving her or the Court regarding the documents in its files. We therefore decline to review any evidence beyond what was available to CGLIC.

Susan also contends that we should discredit James's Declaration because CGLIC "was responsible for both claim determinations and payout of proceeds." Pl. Resp. at 9, ¶ 17. She "is concerned about the credibility of this witness's declaration because he is an employee of CGLIC, which has a pecuniary interest in the outcome of this case." Pl. Resp. Br. at 16. But this is the normal course of events for insurance contracts -- that is, the insurer reviews the claim and then decides whether or not to pay it -- and Susan points to no facts in the record to support her contention that there was a conflict of interest in this situation.

Susan appears to argue that we should never trust evidence submitted by a party's employee because employees are motivated to lie to the Court to benefit their employers. But even if that baseless allegation had some rhetorical force, Susan must do more in responding to a motion for summary judgment than amorphously argue that CGLIC's evidence is untrustworthy. She must produce her own affirmative evidence showing that there is a genuine issue of material fact for trial. She has failed to do so regarding this or any other issue before us.

13

stated that she should receive a "100%" share, and claimed that
Sinead was his "SPOUSE." Form, Def. Ex. 13 at 2. Susan also
agrees with CGLIC that Herbert could change the beneficiary at
any time, but she argues that his designation of Sinead as the
beneficiary was not "on a satisfactory form." Pl. Resp. Br. at
16.

Susan asserts three main reasons that CGLIC should not
have considered Sinead to be the CGLIC Policy beneficiary at the
time that Herbert died. She contends that (1) Herbert should have
used a beneficiary change form, rather than an enrollment form,
to name his beneficiary, (2) because Herbert named Sinead on the
form and then incorrectly stated that she was his spouse, his
designation of Sinead <u>by name</u> as the beneficiary was confusing or
invalid, and (3) records show that there was no beneficiary on
file for the CGLIC Policy at the time that Herbert died.

As to Susan's first argument, the CGLIC Policy
Certificate did not mandate that Herbert use any specific form to
change the beneficiary. It required only that he change
beneficiaries on a form that <u>CGLIC</u> found "satisfactory." CGLIC
clearly found Herbert's Form to be "satisfactory" in its
designation of Sinead as the "100%" beneficiary of the CGLIC
Policy, and CGLIC acted reasonably in doing so. Susan's argument

that Herbert's beneficiary designation is invalid because he submitted the wrong kind of form is therefore unavailing. In Susan's Sur-reply Brief she suggests that Herbert was required to use the beneficiary change form because "this was an existing policy for which there were already designated beneficiaries of record on file." Pl. Sur-reply Br. at 3. This is a specious argument.

Susan admits "that, as a rule, marital status does not trump a properly-completed, signed, dated, and submitted beneficiary designation form." Pl. Resp. at 8, ¶ 15. But she argues that (1) Herbert listed Sinead and his "SPOUSE" as the beneficiary, (2) Sinead and Herbert's legal spouse at the time of his death were not the same person, and (3) CGLIC therefore should have paid the proceeds to Susan because she was Herbert's legal spouse at the time of his death.

But we must defer to CGLIC's determination that Sinead was the proper beneficiary unless that decision was arbitrary and capricious, based on the information that CGLIC had at the time it made the decision. Given that Herbert listed Sinead as the beneficiary by name, CGLIC did not unreasonably pay the benefits to the individual Herbert specifically named, rather than Susan, who was technically Herbert's "spouse." Moreover, at the time

that CGLIC paid the benefits to Sinead, it had <u>no</u> information regarding Susan's competing claim.

At another point in Susan's briefing, despite her admissions regarding the Form, she also contends that at the time of Herbert's death CGLIC had <u>no</u> beneficiary designation on file for the CGLIC Policy. In support of this argument, she cites a computer printout that includes the number for the CGLIC Policy and the phrase "NO BENEFICIARY INFORMATION ON FILE." Pl. Resp. Ex. D5. It is not clear what this printout is, when it was printed, or where it came from, and Susan acknowledges that it is undated. Pl. Resp. Br. at 22. But even if we assume that this is what CGLIC's computer system stated on the date of Herbert's death -- a generous assumption, since Susan has pointed to no facts to support that conclusion -- this does not trump her admission that CGLIC in fact had the Form in its files at the time that Herbert died. If CGLIC had an entry in its computer system that stated "NO BENEFICIARY INFORMATION ON FILE" and a form in its files that specified Sinead as the beneficiary, it did not act arbitrarily and capriciously when it paid the CGLIC Policy proceeds to Sinead.

In summary, Susan has produced no evidence from which a reasonable fact finder could conclude that CGLIC arbitrarily and

capriciously determined that Herbert designated Sinead -- not

Susan -- as the CGLIC Policy beneficiary. We will therefore grant

CGLIC's motion for summary judgment.

**B.    Substantial Compliance**

CGLIC argues in the alternative that the doctrine of

substantial compliance would lead to the same result. We agree

with CGLIC that Herbert strictly complied with the requirements

to change the beneficiary of his CGLIC Policy, but even if he had

not done so, we would grant CGLIC's motion for summary judgment

under the doctrine of substantial compliance.

As we recently discussed in Teachers Ins. and Annuity

Ass'n of America v. Bernardo, 683 F. Supp. 2d 344 (E.D. Pa.

2010), our Court of Appeals "decided that ERISA does not pre-empt

state common law with regard to substantial compliance in

determining the proper beneficiary under an ERISA plan." Id. at

354.[9] Under Pennsylvania law, because it is clear that Herbert

intended Sinead to be his beneficiary and his attempt to comply

---

[9] Susan incorrectly contends that Bernardo does not
apply here because this case is not an interpleader action and
Bernardo did not involve an enrollment form. Pl. Resp. Br. at 13.

with the beneficiary change requirements is also clear, we will

carry out that intent. See id.[10]

### C.   Susan's Irrelevant Contentions and Complaints

Susan also makes other arguments that have nothing to

do with her claim to the CGLIC Policy proceeds. For example, she

(1) argues that the LINA Policy proceeds were improperly

distributed to Sinead, (2) references Herbert's 401(k) plan, (3)

claims that CGLIC violated 29 U.S.C. § 1133 in its July 6, 2005

letter, and (4) contends that CGLIC should not have reinstated

Herbert's life insurance plan because CGLIC did not follow its

own procedures for doing so. We will swiftly set aside her claims

as to § 1133 and the 401(k) and because they are not at issue in

this matter. It is, furthermore, of no moment to Susan whether

CGLIC correctly reinstated the CGLIC Policy. After all, if CGLIC

had not done so, there would be no CGLIC Policy proceeds for

Susan to seek. We will briefly discuss Susan's arguments

---

[10] Susan states that "[t]here is no evidence that
[Herbert] completed a single step to effectuate a change in
beneficiary." Pl. Resp. at ¶ 44. Yet she admits that he submitted
an enrollment form in 2001 on which he designated Sinead as the
beneficiary. Susan may be confused about what counts as a "single
step" to change a beneficiary, but critically for our purposes in
resolving this motion, she admits that on the date of Herbert's
death CGLIC had the Form in its files.

regarding the LINA Policy because her LINA contentions are interwoven -- though mistakenly so -- with her claims to the CGLIC Policy.

### 1. The LINA Policy and CGLIC Policy Were Paid to Sinead for Different Reasons

Susan repeatedly argues in her Response and Sur-reply Briefs that there was no designated beneficiary for the LINA Policy and that the LINA proceeds were mistakenly paid to Sinead under that policy's default rules because the insurer thought Sinead was Herbert's spouse at the time of his death. The May 2, 2006 letter from Beth Ann Miller to Susan's attorney suggests that this may, indeed, have happened -- but <u>only</u> as to the LINA Policy. <u>See</u> Letter from Beth Ann Miller to Ron R. Miller, Esq. (May 2, 2006), Def. Ex. 25. Miller wrote that the LINA proceeds were paid "based on the preference beneficiary wording in the policy," which Susan argues looks to the payee's relationship with the insured. <u>Id.</u> at 1. Miller did <u>not</u> state that Herbert named a beneficiary for the LINA Policy. <u>See</u> <u>id.</u>

As to the <u>CGLIC Policy</u>, however, Miller stated that Herbert "designated Sinead Cook [<u>sic</u>] Bayer as the beneficiary." <u>Id.</u> Miller wrote that although Herbert's identification of Sinead as his spouse "may now seem suspect given Susan Bayer's claim

19

that she was still married to Herbert Bayer when he 'married'
Sinead Cooke . . . the beneficiary form nonetheless designates
Sinead Cooke Bayer by name as the beneficiary. CGLIC distributed
the proceeds to the named beneficiary as designated on July 9,
2001 by Herbert Bayer." Id. See also Letter from Dan Shustock to
Debra Washington DeLain, Esq. (Jan. 3, 2008), Def. Ex. 27
(explaining the same information).

We dismissed Susan's claim to the LINA Policy on
January 28, 2010 because she "did not file her complaint until
after the three-year contractual time limit [for the LINA Policy]
had run -- and because she [did] not provide[] any relevant legal
support for her view that the time limit should have been
tolled." Bayer, 682 F. Supp. 2d at 492. Susan's contentions
regarding the distribution of the LINA Policy proceeds are
therefore no longer at issue in this case.

Most passionately in Susan's Sur-reply Brief, she
argues that Shustock made the decision to pay the CGLIC Policy
proceeds to Sinead based on the preference beneficiary wording or
affidavit -- i.e., because Sinead was purportedly Herbert's
spouse, not because Sinead was named on the enrollment form as
the beneficiary. See, e.g., Pl. Sur-reply Br. at 61-63. In
support of this argument, she primarily relies on an internal

communication between Dan Shustock and a woman named Athena

Carnahan on July 5 and 6, 2005. Approval and Referral Sheet from

Dan Shustock to Athena Carnahan (July 5 and 6, 2005), Pl. Sur-

reply Br. Exs. at P000168-9. Shustock wrote to Carnahan that

> [t]his deceased [Herbert] had 2 claims (1 was
> for GUL and the other 1 was a Term Life). The
> Term claim [LINA Policy] was paid by
> Preference Affidavit to the surviving spouse,
> Sinead C. Bayer. The GUL claim was paid to
> the surviving spouse, Sinead C. Bayer, based
> on the beneficiary designation.
>
> Recent correspondence dated June 23, 2005 is
> attached in which a Susan A. Bayer is
> inquiring how CIGNA paid the GUL claim to
> someone other than her. She was the Primary
> Beneficiary at one time. However, the most
> current beneficiary designation showed Sinead
> C. Bayer, spouse.

Id. Shustock asked Carnahan how to respond to Susan's letter, and

Carnahan advised him that he could tell Susan that she "was

designated at one time" but that Herbert changed the beneficiary

to someone else and "no benefits are payable to her." Id. at

P000169.

Susan quotes selectively from this exchange and claims

that Shustock wrote that "'The GUL claim was paid to the

surviving spouse...based on the beneficiary designation.'" Pl.

Sur-reply Br. at 62 (emphasis and omission in original). She

states that "the GUL claim was paid to the **surviving spouse**

21

[Cooke] based on the **beneficiary designation *Spouse*** and ***not*** based on the 'beneficiary designation' of Sinead Cooke Bayer." Id. (emphasis in original). Susan admits that CGLIC paid the CGLIC Policy proceeds to Sinead based on a beneficiary designation, but she argues, without any supporting evidence, that CGLIC made that decision based on Herbert's statement on the Form that the beneficiary was his spouse, rather than his statement that the beneficiary was "SINEAD COOKE BAYER."

Susan selectively quotes from Shustock's communication with Carnahan, but we actually read the evidence on which parties rely. Unlike Susan, we do not turn a blind eye to Shustock's use of Sinead's name in his communication with Carnahan. Susan argues that Shustock's statements to Carnahan -- surgically altered to reflect Susan's perspective -- strike a fatal blow to CGLIC's claims. But we take the opposite view. Shustock's statement actually supports CGLIC's claim that it paid the CGLIC benefits to the beneficiary that Herbert named and did not rely on Sinead's "marriage" to Herbert to distribute the CGLIC Policy.

## 2.   Susan's Discovery Request

Susan requests discovery so that she may review "the Plan," but she does not specify which "Plan" she would like to

review or explain how that "Plan" relates to the CGLIC Policy or could change the outcome of this motion. <u>See</u> Pl. Resp. at 4-5. She quotes extensively from a document she labels "**<u>The Plan</u>**," so it is unclear whether she has a copy of the document she refers to as "the Plan." <u>Id.</u> (emphasis in original). CGLIC attached the CGLIC Policy and related documents to its motion for summary judgment, so as to <u>this</u> claim Susan should have had all of the "Plan" documents that she needed to prepare her response to the motion for summary judgment.

### 3. Susan's Other Requests <u>For the Litigation to Continue</u>

At the end of Susan's Response Brief she asks that "[i]f the Court should deny CGLIC's Motion for Summary Judgment," we grant her leave to file (1) "an application for the proper payout of [the CGLIC] life insurance benefits," (2) a motion for reconsideration regarding the dismissal of the LINA Policy because she "has new evidence," and (3) an amended complaint "regarding Fluor Corporation." Pl. Resp. Br. at 35. We are, of course, <u>granting</u> CGLIC's motion, and Susan only requests leave to file these documents if we <u>deny</u> it. But even if she had not placed that proviso in her request, the first topic is moot. The plaintiff does not need leave from us to file a motion for

reconsideration, and in her filings thus far she has not established any of the reasons for which the Federal Rules of Civil Procedure would permit us to grant such a motion.

As to filing an amended complaint, we recognize that Fed. R. Civ. P. 15 mandates that we "freely give leave [to amend pleadings] when justice so requires." This is not a situation in which "justice . . . requires" us to give Susan leave to file an amended complaint. This is her second lawsuit regarding her claims to Herbert's policies, and she waited to request leave to file an amended complaint until <u>this</u> matter was at a procedurally advanced stage.[11] She has blanketed the Court with all of her arguments -- relevant and irrelevant -- and still fails to articulate what potentially valid claims she would make in yet another complaint. Under these circumstances, permitting Susan to file another complaint would award her game-playing and continue to place a heavy burden on the Court and the defendants. To borrow a phrase from Susan's Sur-reply Brief, "[e]nough is enough." Pl. Sur-reply Br. at 62.

---

[11] Susan also rejected the motion to amend the complaint that her counsel filed before he requested leave to withdraw his appearance.

### D.   CGLIC Motion for Attorney's Fees and Costs

CGLIC requests leave to file a motion for attorney's fees and costs pursuant to ERISA § 502(g)(1), which is codified at 29 U.S.C. § 1132(g)(1). Under that provision, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We will entertain such a motion from CGLIC if CGLIC still intends to file it, as long as CGLIC does so by July 26, 2010.[12]

## III. Conclusion

For the reasons we discuss above, we will grant CGLIC's motion for summary judgment. As this is the last active claim in this matter, we will also order the Clerk of Court to statistically close this case. We decline to grant Susan the opportunity to prolong this litigation any further.


BY THE COURT:

__\s\Stewart Dalzell

---

[12] If CGLIC on sober reflection decides not to seek fees and costs, it should so inform us on or before July 26, 2010.